UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANA MILAGROS PABON,

                                Plaintiff,      **No. 6:14-cv-06532(MAT)**
                                                                          **DECISION AND ORDER**
          -vs-

CAROLYN W. COLVN, Acting
Commissioner of Social Security,

                                Defendant.
_____

**I.    Introduction**

    Represented by counsel, Ana Milagros Pabon ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

**II.   Background**

    On August 5, 2011, Plaintiff filed a concurrent application for DIB and SSI alleging disability based on anxiety, bipolar disorder, depression with psychotic features, diabetes mellitus, obesity, and asthma, with an onset date of October 17, 2010, and a

last insured date of September 30, 2014. T.97-98, 138-52.[1] After the application was denied, Plaintiff requested a hearing, which was conducted via videoconference on March 21, 2013, by administrative law judge Joseph L. Brinkley ("the ALJ"). T.57-95. The ALJ issued an unfavorable decision on March 29, 2014. T.11-27. In her request for administrative review of the decision, Plaintiff amended her alleged onset date of disabilty to May 25, 2011, T.6-10, 198-200. The Appeals Council denied review on July 18, 2014, T.1-5, making the ALJ's decision the final decision of the Commissioner. This timely action filed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed factual recitations contained in the parties' briefs. The Court notes, however, that the Commissioner's memorandum of law, like the ALJ's decision, does not reference or summarize Plaintiff's medical records from approximately August 2011, to November 2012, and is incomplete in that regard. The Court will discuss the record evidence in further detail below, as necessary to the resolution of the parties' contentions.

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

**IV. The ALJ's Decision**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating SSI and DIB claims. See 20 C.F.R. §§ 404.1520, 416.920. The ALJ found that

Plaintiff meets the insured status requirements of the through September 30, 2014, and has not engaged in substantial gainful activity since October 17, 2010, the alleged onset date.

At step two, the ALJ found that Plaintiff has the following "severe" impairments: depression with psychosis; diabetes; GERD; hypertension; syncope/dizziness; headaches; and allergies/asthma.

At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In particular, the ALJ considered Listing 12.03 (Psychotic Disorders) and Listing 12.04 (Affective Disorders). Considering the "Paragraph B" critera for these listings, the ALJ found that Plaintiff has mild difficulties with activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence and pace. Accordingly, the ALJ determined, Plaintiff does not meet the "Paragraph B" criteria for Listings 12.03 and 12.04. The ALJ also did not find that the evidence "shows 'decompensation' as defined by the Regulations."

The ALJ proceeded to assess Plaintiff's residual functional capacity ("RFC") and found that she can perform "light" work, except that she must avoid concentrated exposure to workplace hazards including dangerous machinery and unprotected heights. As to nonexertional limitations, the ALJ found she is "limited to

simple, routine, repetitive tasks, no in-person contact with the public, no work in teams or tandem, little change in the work structure, and [a] low stress [environment] (no production quotas or assembly lines)." T.19.

At the hearing, the vocational expert ("the VE") had testified that a person with the RFC assigned by the ALJ could not perform Plaintiff's past relevant work (Customer service, D.O.T. 299.367-010, light exertional level, SVP 4; (2) Assembler I, D.O.T. 706.684-022, light exertional level, SVP 2; and (3) Drycleaner helper, D.O.T. 362.686-010, medium exertional level, SVP 2). However, the VE testified, a person of Plaintiff's age (a younger individual as of the onset date), vocational history, and RFC would be able to perform the requirements of representative occupations such as (1) Housekeeping cleaner, D.O.T. 323.687-014 (20,000 statewide, 800,000 nationally); (2) Machine tender, D.O.T. 692.685-026 (800 jobs statewide, 98,000 nationally); and (3) Table worker, D.O.T. 734.687-014 (l,200 jobs statewide, 92,000 nationally)). Accordingly, the ALJ entered a finding of not disabled.

**V.  Discussion**

    **A.  Errors in the RFC Assessment**

As courts in this Circuit have observed, "[i]t is well-settled that '[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (S.S.A. 1996); citing Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998)). Although the Second Circuit recently "conclude[d] that the failure explicitly to engage in such a function-by-function analysis does not constitute a per se error requiring remand." Cichocki v. Astrue, 729 F.3d 172, 173-74 (2d Cir. 2013) (per curiam), the ALJ's step four analysis nonetheless must provide an adequate basis for meaningful judicial review, apply the correct legal standards, be supported by substantial evidence. See id. at 174 (holding that ALJ's failure to perform function-by-function assessment of claimant's limitations at step four did not require remand where ALJ's "analysis of [claimant]'s limitations and restrictions provide[d] an adequate basis for meaningful judicial review, the ALJ's determination applie[d] the correct legal standards, and . . . it [was] supported by substantial evidence"). Furthermore, "[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); other citation omitted).

Here, after citing to a portion of the treatment record, the ALJ stated, "I find that the limitations to simple work, no contact with the public, no work in teams or tandem, low stress, and little change in work structure, adequately accounts for any mental deficits shown in the record." T.22. However, as Plaintiff points out, the ALJ omitted a large swath of records from his discussion of her treatment records. Specifically, after citing to records indicating a psychiatric hospitalization in April 2011,[2] and observing that her GAF (global assessment of functioning) was 55[,]" T.20, the ALJ skipped ahead to a psychiatric medication review in August of 2012, where her GAF actually was lower, at 50. T.20. The ALJ ignored the fact that her GAF had decreased and moved ahead to November 2012, when Plaintiff's GAF had increased slightly to 55; she was taking Seroquel, Wellbutrin, and lorazepam, and attending therapy. The ALJ stated that the GAF score of 55 denoted only "moderate" symptoms. There are several problems with the ALJ's analysis. First, the fact that Plaintiff's GAF was 55 in the midst of a psychiatric hospitalization following a suicide attempt, and also 55 while she was compliant with her medications and in therapy, does not support the ALJ's assertion that her mental

---

[2] On April 1, 2011, Plaintiff was hospitalized following a suicide attempt by an intentional overdose of Depakote, T.422-26, a mood stabilizing medication commonly used to treat bipolar disorder, see https://www2.nami.org/Template.cfm?Section=Access_to_Medications&Template=/ContentManagement/ContentDisplay.cfm&ContentID=74629 (last accessed Sept. 21, 2015).

impairments improved when she was compliant with medication and therapy recommendations.

Second, a GAF is of little use in determining disability as "[t]he Commissioner has made clear that the GAF scale does not have a direct correlation to the severity requirements contained in the [regulations] that the ALJ considers [to determine whether the claimant has a per se disability]." Santiago v. Colvin, 12 CV 7052, 2014 WL 718424, at *20 n. 10 (S.D.N.Y. Feb. 25, 2014) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764-65, 2000 WL 1173632 (Aug. 21, 2000)); see also Beck v. Colvin, 6:13-CV-6014(MAT), 2014 WL 1837611, at *10 (W.D.N.Y. May 8, 2014) ("[A] GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work.") (quotation omitted).

Third, the ALJ apparently relied on the generalized assessments of functioning represented by a few scattered GAF scores while excluding consideration of more than 12 months of mental health treatment notes. In these records, Plaintiff's treating sources consistently documented specific clinical findings of impaired functioning, including that Plaintiff had a disheveled appearance; a guarded and/or suspicious attitude; regressed behavior and/or speech; delayed speech; agitated, restless, or

hyperactive motor activity; perseveration;[3] disorganized thought processes; negative ruminations; depressed thought processes; tangential thought processes; racing thoughts; obsessive thought content; delusions and/or paranoia; auditory, command, and/or visual hallucinations; poor attention span/concentration; constricted or restricted affect; labile affect; flat affect; blunted affect; depressed, anxious, angry, and/or labile mood; poor insight; and impaired or impulsive judgment. See generally T.344-45, 347, 349-50, 354, 356-57, 359, 361, 363, 365, 368, 371, 375, 440, 442-45, 449, 451, 456). For instance, on June 24, 2011, Plaintiff had symptoms of command auditory hallucinations paranoia ~ severe." T.345. She reported "no effect to new anti psychotic." Id. On July 15, 2011, Plaintiff "continue[d] to suffer from significant paranoia. She presents [with] lability-tearful-sobbing-reports no relief from command hallucinations-even on anti-psychotic." T.349. It bears emphasizing that these clinical findings were made during periods where Plaintiffs was compliant with her medication and therapy regimens. E.g., T.356 (9/08/11; Plaintiff presented with audiovisual hallucinations and "continue[d] to report compliance [with] medications"); T.449 (8/31/12; Plaintiff was taking Celexa, Seroquel XR, Cogentin, and

---

[3] "In clinical psychology[,]" perseveration is defined as "the uncontrollable repetition of a previously appropriate or correct response, even though the repeated response has since become inappropriate or incorrect." http://medical-dictionary.thefreedictionary.com/perseveration (last accessed Sept. 21, 2015).

Vistaril (hydroxyzine pamoate) but continued to experience active hallucinations, both visual and auditory; treating psychiatrist Dr. Gardy observed, "I thought she was not able to function socially or in terms of employment").

These omitted records undermine the ALJ's assertions that Plaintiff was largely noncompliant with her treatment recommendations and that her symptoms improved during times that she was compliant with her medication regimen. Because these key conclusions are improperly based on a selective citation to, and mischaracterization of, the record evidence, the Court finds that the ALJ's decision does not provide an adequate basis for meaningful judicial review. Remand accordingly is required. See, e.g., Cook v. Colvin, No. 13cv1946(TPG), 2015 WL 5155720, at *13 (S.D.N.Y. Sept. 2, 2015) ("In an attempt to reconcile Dr. Bioh's findings with Dr. Hamway's statements, the ALJ: (1) overlooked Dr. Bioh's March 2011 report finding Cook's prognosis to be guarded, and (2) mischaracterized Dr. Bioh's treatment notes to find Cook not disabled. The ALJ may not ignore or mischaracterize evidence of a person's alleged disability.") (citing Ericksson v. Commissioner of Soc. Sec., 557 F.3d 79, 82-84 (2d Cir. 2009) ("[T]he record demonstrates that the first ALJ improperly disregarded or mischaracterized evidence of Ericksson's continuing disability, and that the second ALJ awarded Ericksson benefits

based, in substantial part, on a proper assessment of this very evidence.")).

**B.  Incompleteness of Record**

Part of an ALJ's duty to obtain necessary medical records is "an obligation to obtain a proper assessment of the claimant's RFC." Hilsdorf v. Commissioner of Soc. Sec., 724 F. Supp.2d 330, 347 (E.D.N.Y. 2010) (citing 20 C.F.R. § 404.1513(b) (describing "medical reports" as including "statements about what [a claimant] can still do")). "Where a treating physician has not assessed a claimant's RFC, the ALJ's duty to develop the record requires that he sua sponte request the treating physician's assessment of the claimant's functional capacity." Marshall v. Colvin, 12-CV-6410T, 2013 WL 5878112, at *9 (W.D.N.Y. Oct. 30, 2013) (citing Myers v. Astrue, No. 7:06-CV-0331(NAM/RFT), 2009 WL 2162541, at *3 (N.D.N.Y. July 17, 2009) ("[T]he Court concludes that the ALJ failed to adequately develop the facts. While the record contains treatment notes for the relevant time period from Drs. Beane and Aronowitz, the administrative transcript does not contain any opinions from Drs. Beane or Aronowitz regarding how plaintiff's mental impairments affect her ability to perform work-related activities. Indeed, the only assessment of plaintiff's mental ability to do work related activities was provided by a consultative physician."); Felder v. Astrue, No. 10-CV-5747(DLI), 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012)). Here, the record does

not contain any opinions regarding Plaintiff's mental RFC from any of her treatment providers, including her psychiatrist, Dr. Gardy; her therapist, LMSW O'Neil; or her primary care physician, Dr. Stuber. Nor does the record reflect that the ALJ ever requested such reports. Furthermore, the record lacks an examination of Plaintiff by a consultative psychiatrist or psychologist. While the ALJ faulted Plaintiff because she "failed to attend a consultive examination as requested by DDS," T.21, the "relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record." Burger v. Astrue, 282 F. App'x 883, 885 (2d Cir. 2008) (unpublished opn.) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); 20 C.F.R. § 404.1512(d)-(f)). Here, the ALJ chose not to do so, and, as a result, there are no medical findings in the record, consultative or otherwise, to support the ALJ's RFC assessment.

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf, 724 F. Supp.2d at 347 (citing Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); Zorilla v. Chater, 915 F. Supp. 662,

666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.") (citing Rivera-Torres v. Secretary of Health and Human Servs., 837 F.2d 4, 6-7 (1st Cir. 1988)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (substantial evidence did not support finding by ALJ, on claimant's application for disability benefits, that claimant had RFC to perform fine manipulation/fingering 50% of the time with his dominant right upper extremity during a typical workday; wide range of physicians' opinions from total loss of function to a determination that claimant's hand and finger dexterity were intact was not evidence that claimant had 50% RFC). Here, as Plaintiff notes, the record contains no treating source or consultative opinions regarding her mental RFC, despite the extensive history of treatment for significant mental disorders. In the absence of competent medical opinions, the ALJ improperly relied on his own lay interpretation of the record to formulate his RFC assessment. Remand accordingly is required to develop the record by obtaining a consultative psychiatric or psychological examination as well as a medical source statement from Plaintiff's treating psychiatrist.

### C.   Errors in the Credibility Assessment

The Commissioner has promulgated regulations outlining a two-step framework under which an ALJ must evaluate a claimant's

subjective description of her impairments and her related symptoms. See 20 C.F.R. §§ 404.1529, 416.929. Once the ALJ determines that the claimant has a medically determinable impairment which could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence. E.g., Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010) (unpublished opn.) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii); Taylor v. Barnhart, 83 F. App'x 347, 350-51 (2d Cir. 2003) (summary order)). Here, as noted above, the ALJ omitted approximately a year's worth of treatment notes from his discussion of the record evidence supporting his RFC assessment. Since the regulations regarding credibility assessments require the ALJ to consider "*all* of the available evidence[,]" Meadors, 370 F. App'x at 183 (citation omitted; emphasis supplied), this omission necessarily marred his analysis of Plaintiff's subjective complaints.

In addition, the ALJ discounted Plaintiff's credibility based on her alleged failure to follow prescribed treatment and purported improvement in her symptoms during periods of compliance. Again, as discussed above, these assertions were premised on an incomplete and inaccurate characterization of the record. Furthermore, to the extent that there are periods of noncompliance in the record, the ALJ's reliance on them to find Plaintiff's complaints not credible, without first inquiring into the reasons for any noncompliance,

misapplies the proper legal standard. The regulations specify that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at * (S.S.A. 1996); see also Frankhauser v. Barnhart, 403 F. Supp.2d 261, 277-78 (W.D.N.Y. 2005) ("Compliance with prescribed treatment that is capable of restoring a plaintiff's ability to work is required to obtain benefits, *unless there is a good reason* for not following prescribed treatment.") (citing 20 C.F.R. §§ 404.1530, 416.930; emphasis supplied).

The ALJ committed further error in finding that Plaintiff's relatively minimal activities of daily living undermined her credibility. See Polidoro v. Apfel, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) ("A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.") (citing Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). The Court also notes that the ALJ's credibility analysis placed Plaintiff in a no-win situation: While

deeming her less credible because she at times was noncompliant with her treatment, the ALJ at the same time found that her ability to attend appointments and "change her insurance" showed that her limitations were not as severe as she claimed. This not only was unfair, but it amounted to a misapplication of the appropriate legal standard. See, e.g., Miller v. Colvin, __ F. Supp.3d ___, 2015 WL 4892618, at *5 (W.D.N.Y. Aug. 17, 2015) (finding that it was improper to discount claimant's complaints based on his attendance of medical appointments, since doing so "even on a regular basis is not tantamount to being able to perform work-related activities on a full-time or equivalent basis in a normal workplace" and "unfairly penalizes [a claimant] for pursuing treatment for his serious mental impairment"). In sum, the ALJ's errors at earlier steps of the sequential analysis necessarily affected his credibility assessment. Remand accordingly is required.

**VI.  Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings (Dkt #10) is denied, and Plaintiff's Motion for Judgment on the Pleadings (Dkt #9) is granted to the extent that the matter is remanded for further administrative proceedings consistent with this decision.

Specifically, the ALJ will (1) request a medical source statement regarding Plaintiff's mental RFC from her current treating psychiatrist; (2) direct Plaintiff to undergo an examination by a consultative psychiatrist or psychologist; (3) re-assess Plaintiff's mental RFC in light of the entire record and provide a narrative discussion describing how the evidence supports each aspect of the mental RFC; and (4) re-evaluate Plaintiff's credibility under the proper two-step standard.

**SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   September 28, 2015
         Rochester, New York